Edmond E. STITES, Plaintiff–Appellant,

v.

DUIT CONSTRUCTION COMPANY, INC., Defendant–Appellee.

No. 79337.

Supreme Court of Oklahoma.

June 27, 1995.

Rehearing Denied Sept. 20, 1995.

Harry Scoufos, Sallisaw, for appellant.

D. Stuart Basham, Oklahoma City, William K. Orendorff, Sallisaw, for appellee.

OPALA, Justice.

Three issues are dispositive of appellant's certiorari quest for corrective relief: (1) Did the trial court's jurisdiction end at either the satisfaction-of-judgment stage or at the point plaintiff dismissed the action? (2) Did the trial court in the exercise of its vacation power have ancillary cognizance to entertain defendant's restitutionary counterclaim? and (3) Should this appeal be dismissed as untimely?

We answer the first question in the negative and the second and third in the affirmative.

I

## THE ANATOMY OF LITIGATION

Edmond Stites [Stites] brought an action to recover damages for water claimed to have been taken from his property by DUIT Construction Company, Inc. [DUIT], for use in a highway project for the Oklahoma Department of Transportation [ODOT]. When his discovery quests had gone unanswered,[1] Stites successfully pressed for summary adjudication. The following month (February 22, 1991) Stites sought to satisfy the judgment by garnishing ODOT. On April 23, 1991, ODOT paid into court $48,525.00. The next month Stites filed a second garnishment affidavit for the balance of his judgment, and on June 24, 1991 ODOT paid into court $3,027.55. *Three weeks earlier (on June 5,*

---

**1.** The nisi prius summary judgment for Stites was *rendered* September 10, 1990 and the memo-rializing order was *entered* January 7, 1991.

*1991)* DUIT *timely commenced* its quest for vacation of the summary judgment.[2]

The trial court *vacated the judgment* on September 4, 1991 (its order was entered September 25, 1991), overruling Stites' challenges to DUIT's vacation plea. *The court then afforded DUIT a restitutionary remedy* by directing that *garnishment funds still remaining in the trust account of Stites' lawyer be paid into court.*[3] No motion addressed to that order was filed below within ten days of the order's entry. After the judgment's vacation DUIT filed its responses to Stites' discovery requests and applied, on September 16, 1991, for an order *compelling Stites to pay into court* all the funds *received* in satisfaction of the vacated judgment. *On September 26, 1991 Stites voluntarily dismissed his water loss action against DUIT.*[4]

On October 23, 1991 DUIT renewed its restitutionary plea for immediate return of the funds (into court). At a post-dismissal hearing (on February 26, 1992) the trial court *overruled* Stites' multiple challenges to DUIT's restitutionary plea and *reiterated* its earlier directive that funds remaining in the trust account of Stites' lawyer be paid into court.[5] The order memorializing this ruling was entered *March 26, 1992.*

### The Court of Appeals' Pronouncement

Stites, who lodged an appeal *from the March 26, 1992 order,* argues on certiorari that when he *dismissed* his suit against DUIT the trial court *lost jurisdiction of the entire case* and over the (unvacated) garnishment proceeds that constituted at least *pro tanto* satisfaction of his claim against DUIT. According to Stites, the nisi prius court acted dehors its authority when considering the *belated filing* of DUIT's discovery responses. DUIT counters that the trial court had cognizance to enter its March 26, 1992 order directing Stites to pay the contested funds into court. Because, as DUIT argues, Stites *failed timely to appeal* from the earlier September 25, 1991 (restitution) order requiring him to pay the funds into court, he should not *now* be allowed to secure review of the trial court's March 26th *reaffirmation of that earlier order.*

The Court of Appeals reversed the nisi prius decision, reasoning that Stites' judgment legally ceased to exist upon payment of garnishment proceeds, leaving absolutely nothing in the case for the trial court to act upon.[6] We granted certiorari on DUIT's

2. In its June 5, 1991 vacation quest DUIT asserts that (1) neither DUIT nor its counsel received notice of (a) the motion for summary disposition or of (b) the rendition and entry of summary adjudication, (2) it had a valid defense and (3) even if Stites were entitled to damages, the amount of his loss would not exceed $2,000.00.

3. The nisi prius order (entered September 25, 1991) states in pertinent part: " * * * *Court further found that any and all money received by Plaintiff on said Judgment that still remains in the trust account of attorney Scoufos should be immediately paid into the Court and placed in an interest bearing account pending final disposition in the matter.* * * *"* (Emphasis added.)

4. After Stites voluntarily dismissed the action, DUIT commenced in the same court (No. C–91–471) a separate restitution suit (on November 11, 1991). Stites pressed for the new suit's dismissal and DUIT moved for summary adjudication in its favor. At a consolidated hearing held on February 26, 1992 to consider motions urged in *both* the instant action and in the separate restitutionary suit, the nisi prius court overruled the parties' motions in the latter (restitution) case. Stites lodged an appeal from the denial of his dismissal motion (Sup.Ct. No. 79,338). He then brought an original proceeding in this court to

prohibit the respondent-judge from proceeding further in the case, arguing that the trial court was acting *sans* cognizance (Sup.Ct. No. 79,451). This court dismissed the appeal on July 7, 1992, ruling that it was prosecuted from a nonappealable order, and rejected Stites' quest for a writ of prohibition by declining to take original cognizance of the case.

5. As for the funds that Stites had received before the September 4, 1991 hearing, which were sought to be reached by DUIT's September 16, 1991 and October 23, 1991 applications, the trial judge stated (at the February 26, 1992 post-dismissal hearing): "I'm not going to compel payment of those funds disbursed out of the trust account prior to the Court's [September 25, 1991] order.... [T]hat issue is still to be decided of who is right and who is entitled to those funds."

6. The Court of Appeals relied on *Mitchell v. Lindly*, Okl., 351 P.2d 1063 (1960), where this court upheld the trial judge's *refusal to vacate a voluntarily satisfied judgment* based upon the parties' settlement agreement. *Mitchell* is distinguishable from the present case. Here *satisfaction* was the product of *coercive* garnishment process

petition and now, for the reasons to be explained, vacate the Court of Appeals' opinion and dismiss Stites' appeal as untimely.[7]

## II

### DUIT'S DISMISSAL QUEST

█ DUIT, who initially pressed for dismissal of Stites' appeal when it was at the pre-briefing stage, later argued on appeal that the March 26, 1992 disposition is not appealable. Although this dismissal quest was denied on July 7, 1992,[8] *DUIT later repressed the motion in its answer brief.* According to DUIT's brief, Stites is too late for corrective relief from the trial court's March 26 *reaffirmation* order; he should have perfected a timely appeal from the *earlier* September 25, 1991 ruling that initially gave DUIT its restitutionary relief.

█ Unless there is an *express* indication to the contrary—in the dismissal's denial followed by the time-honored phrase *"with prejudice to its renewal"*—this court's order that overrules a motion to dismiss is always

---

rather than the parties' settlement. *See* discussion in Part IV, *infra.*

7. For our analysis of the appeal's tardiness, see Part VI, *infra.*

8. The July 7, 1992 order declares the March 26 disposition "which required appellant to pay money into court ... is a final order." The Court of Appeals treated this language as conclusory. DUIT's failure once again to press on certiorari for the appeal's dismissal does not place that jurisdictional issue beyond our reviewing cognizance. This court must afford certiorari claimants *sua sponte* review of all issues undecided in an appeal, which were there properly preserved and briefed. *Hough v. Leonard,* Okl., 867 P.2d 438, 446 (1993), amending Rule 3.15(A), Rules On Perfecting A Civil Appeal, 12 O.S. 1991, Ch. 15, App.3. *Moreover, jurisdictional issues must be revisited, on motion or sua sponte, at any stage of proceedings. Lincoln Bank and Trust v. Tax Com'n,* Okl., 827 P.2d 1314, 1318 n. 14 (1992); *Cate v. Archon,* Okl., 695 P.2d 1352, 1356 n. 12 (1985); *Spain v. Kernell,* Okl., 672 P.2d 1162, 1164–1165 (1983). *See also Bryan v. Seiffert,* 185 Okl. 496, 94 P.2d 526, 531–532 (1939).

9. *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 374, 377 (1979); *Arkansas Louisiana Gas Co. v. McBroom,* Okl.App., 526 P.2d 509, 510 (1974); *Chicago, R.I. & P.R. Co. v. American Airlines, Inc.,* Okl., 408 P.2d 789, 793 (1965);

---

subject to reconsideration.[9] *Jurisdictional inquiries into appellate or certiorari cognizance may be considered and re-examined, on motion or sua sponte, at any stage of the proceedings.*[10]

This court's *earlier* denial of DUIT'S dismissal motion clearly poses *no* barrier to today's re-examination of appellate cognizance *in this* certiorari proceeding. *Our July 7 order is unburdened by the "with-prejudice-to-renewal" verbal bar.· DUIT was hence free to retender its jurisdictional challenge in the appellate brief and there is absolutely no impediment to this court's revisit of the issue on certiorari.*

## III

### STITES' MISPERCEPTION THAT THE *EARLIER* SEPTEMBER 25, 1991 ORDER NEED NOT HAVE BEEN APPEALED BECAUSE IT IS FACIALLY VOID

█ In his post-dismissal challenges to DUIT's restitutionary plea,[11] Stites asserts

---

*Red Eagle v. Cannon,* 198 Okl. 330, 177 P.2d 841, 842 (1947); *Mount v. Schulte,* 193 Okl. 335, 143 P.2d 424, 426 (1943); *Sawyer v. Sawyer,* 182 Okl. 348, 77 P.2d 703, 704 (1938). ·

10. It is this court's duty to inquire *sua sponte* not only into its own jurisdiction but also into the cognizance of the court whence the case came by appeal or on certiorari. *Lincoln, supra* note 8 at 1318; *Fields v. A & B Electronics,* Okl., 788 P.2d 940, 941 (1990); *Hall v. Edge,* Okl., 782 P.2d 122, 124 (1989); *Baylis v. City of Tulsa,* Okl., 780 P.2d 686, 688 (1989); *April v. City of Broken Arrow,* Okl., 775 P.2d 1347, 1355 (1989); *Snyder v. Smith Welding & Fabrication,* Okl., 746 P.2d 168, 171 (1986); *Luster v. Bank of Chelsea,* Okl., 730 P.2d 506, 508 (1986); *Matter of Initiative Petition Filed Nov. 15, 1983,* Okl., 718 P.2d 1353, 1354 (1986); *Cate, supra* note 8 at 1356 n. 12; *Spain, supra* note 8 at 1164–1165; *Woods Petroleum Corp. v. Sledge,* Okl., 632 P.2d 393, 394 (1981); *Pointer v. Hill,* Okl., 536 P.2d 358, 361 (1975); *Hayhurst v. Hayhurst,* Okl., 421 P.2d 257, 260 (1966); *Mid–Continent Pipe Line Co. v. Wilkerson,* 200 Okl. 335, 193 P.2d 586, 588 (1948); *Harber v. McKeown;* 195 Okl. 290, 157 P.2d 753, 754 (1945); *Bryan, supra* note 8 at 531–532.

11. Stites challenged the September 25 order (as well as DUIT's post-order quest for restitutionary relief) by motions (a) to quash DUIT's application for order compelling payment of funds (Decem-

that once the judgment had been fully satisfied through the garnishment process, the action came to a legal termination and the nisi prius cognizance stood extinguished. There was then no longer any room either for *vacation* or for any other judicial action to secure restitutionary relief in an ancillary or independent proceeding. In short, *Stites viewed the September 25, 1991 order as a facial nullity from which no corrective relief was needed.* This is so because, to him, the order was void based on a mere inspection of the record. Owing to this notion, he neither brought an appeal from the September 25 order nor pressed a timely new trial motion.[12] He felt protected by the action's dismissal filed the next day (September 26, 1991). We assume it was *after* his later unsuccessful attack upon the *first* (September 25) order that Stites decided to appeal from the March 26, 1992 denial of relief. At this point, it would seem, Stites began to apprehend danger from the res judicata effect of the rejected jurisdictional challenges he vigorously pressed in the most recent nisi prius contest.[13]

For the reasons to be explained, we hold that (a) the *first (September 25) order* was at once appealable under the provisions of 12 O.S.1991 § 952(b)(2)[14] and (b) the *second one* (on review here) constitutes a mere *reaffirmation* of the first. *Central* to this holding—that requires today's dismissal of the appeal—is our determination that the September 25, 1991 order, which vacates the judgment and grants DUIT restitution, was an effective exercise of the court's vacation power and of its ongoing cognizance over an ancillary issue. It follows that Stites' appeal from the March 26, 1992 *reaffirmation* of the September 25 vacation order (*cum* restitution relief) came here too late.

■ Even if the earlier order had been utterly void on its face, the time for appealing against its binding force would have been the same. One cannot justify postponing an appeal by one's good-faith belief in the decision's invalidity.[15] Mandatory appeal time applies to all orders, whether valid or infirm.[16] Stites was led into an erroneous as-

ber 3, 1991) and (b) to strike DUIT's response to his motion to quash (February 11, 1992).

**12.** A 12 O.S. 1991 § 651 motion for new trial must be brought *not more than ten days* after the "verdict, report or decision is rendered" and is limited to § 651 grounds. *A timely-filed new trial motion extends appeal time.* The pertinent terms of 12 O.S. 1991 § 651 are:

"A new trial is a reexamination in the same court, of an issue of fact, or of law, either or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report or decision shall be vacated, and *a new trial granted, on the application of the party aggrieved, for any of the following causes*, affecting materially the substantial rights of such party:

First. *Irregularity in the proceedings* of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial. * * *" (Emphasis added.)

Stites' post-dismissal challenges, *supra* note 11, *were pressed more than two months* after the September 25, 1991 order.

**13.** When a district court judgment or order is void on the face of the judgment roll (and no proof dehors the record is hence needed to show a fatal jurisdictional defect), *no* lapse of time can bar an attack, direct or collateral. 12 O.S. 1991 § 1038. A litigant who is deemed aggrieved by a jurisdictionally defective decision is allowed but

a single "whack" at any facially void target. *Depuy v. Hoeme*, Okl., 775 P.2d 1339, 1345 (1989); *White v. White*, Okl., 607 P.2d 700, 703 (1980) (Opala, J., concurring); *Bruce v. Miller*, Okl., 360 P.2d 508, 511–512 (1960); *Tippins v. Turben*, 162 Okl. 136, 19 P.2d 605, 608 (syllabus ¶ 4) (1933); *Brett v. Fielder*, 136 Okl. 222, 277 P. 216, 217 (1929). The doctrine of res judicata operates to bar *successive jurisdictional* attacks launched on the same grounds. *White, supra* at 703; *Tippins, supra* at 217, 19 P.2d 608; *Brett, supra* at 217–218.

**14.** The pertinent terms of 12 O.S. 1991 § 952(b)(2) are:

"(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:

\* \* \* \* \* \*

2. An order that ... vacates or refuses to vacate a final judgment; * * *"

**15.** *See Salyer v. National Trailer Convoy, Inc.*, Okl., 727 P.2d 1361, 1362 n. 2 (1986).

**16.** This court stands committed to the view that, on an appealable event's occurrence, *no* authority exists *in anyone* to extend appeal time by any means or in any manner, direct or oblique. *See Manning v. State ex rel. Dept. of Public Safety*, Okl., 876 P.2d 667, 671 (1994); *Grant Square Bank & Trust Co. v. Werner*, Okl., 782 P.2d 109,

sumption by (a) his own misperception that the *first* order was facially void and hence of no effect and (b) his incorrect position that invalid nisi prius action need not be challenged at once. His *belated* post-order challenges, *all designed to relieve him of the effect of the first order,* did not operate to extend the time for appeal against the decision by which he stood aggrieved.

In sum, Stites' present quest for corrective relief by appeal against the *reaffirmation* of an earlier restitutionary order came too late.

## IV

### THE TRIAL COURT'S COGNIZANCE DID NOT END WITH ENTRY OF JUDGMENT FOR STITES NOR WITH THAT JUDGMENT'S LATER SATISFACTION

■ Stites argues that the trial court *lost jurisdiction* in this case for all purposes upon the satisfaction of judgment through the garnishment process and was hence without power to entertain DUIT's quest to vacate the money judgment.

Oklahoma's jurisprudence holds that a *voluntarily satisfied judgment* moots both an appeal that is lodged against it and all nisi

prius vacation process.[17] This is so because any errors in its entry become hypothetical or academic and hence no longer available for the exercise of judicial cognizance.[18] Within the meaning of this rule, loss of jurisdiction takes place because *nothing else remains to be done in the cause before the court. This is not to say that the trial court automatically loses cognizance after release and satisfaction is filed.* Its jurisdiction continues over fraudulent releases of judgment or over post-satisfaction disputes about the *legitimacy of satisfaction.*[19] In short, the ultimate power to determine (at the post-satisfaction stage) whether a judgment has been *voluntarily satisfied* rests in the trial court.[20] *Coerced satisfaction of judgment through garnishment process* (as in this case) *raises no bar* to (a) a timely attack upon the judgment, (b) its vacation, on timely motion or petition upon tenable legal grounds, or (c) the restitution of funds paid towards its satisfaction.[21]

■ Neither does DUIT's *failure to appeal* from the pay orders in garnishment[22] operate as a barrier to advancing a restitutionary remedy. By allowing the garnishment process to stand unassailed, DUIT

111 n. 4 (1989); *Salyer, supra* note 15 at 1362 n. 2; *Manos v. Leche,* 205 Okl. 213, 236 P.2d 693, 695 (1951); *Watchorn v. General Finance & Sales Co.,* 162 Okl. 203, 19 P.2d 566 (the court's syllabus ¶ 2) (1933); *Starr v. Woods,* 162 Okl. 242, 19 P.2d 561, 562 (1933); *Sowers v. Archer,* 161 Okl. 148, 17 P.2d 422, 423 (1932); *Philbrock v. Home Drilling Co.,* 117 Okl. 266, 246 P. 457 (the court's syllabus ¶ 2) (1926); *Bellamy v. Washita Valley Telephone Co.,* 25 Okl. 792, 108 P. 389 (the court's syllabus ¶ 2) (1910); *Herring v. Wiggins,* 7 Okl. 312, 54 P. 483 (the court's syllabus ¶ 1) (1898). Once judgment has become final for want of appeal, any nisi prius effort to extend the time for an appeal lies beyond the powers of the court and will be held of no avail. *Blackwelder v. Naylor,* Okl., 439 P.2d 202, 203 (1967); *Adams v. Hobbs,* 204 Okl. 85, 226 P.2d 913, 914 (1951).

17. *Mitchell, supra* note 6 at 1067.

18. *Reece v. Chaney,* 28 Okl. 501, 114 P. 608, 609 (1911); *Tinker v. McLaughlin–Farrar Co.,* 29 Okl. 758, 119 P. 238, 239 (1911); *Duncan v. Ratcliff,* 63 Okl. 19, 161 P. 1174 (1916); *Bateman v. Riner,* 170 Okl. 13, 38 P.2d 581, 582 (1934); *Wallace v. Boston Mut. Life Ins. Co.,* 197 Okl. 468, 172 P.2d 629, 632 (1946); *Pixley Lumber*

*Company v. Woodson,* Okl., 556 P.2d 596, 598 (1976); *Hart v. Jett Enterprises, Inc.,* Okl., 744 P.2d 561, 563 (1985) (Opala, J., concurring).

19. *See, e.g., Jett, supra* note 18 at 563 (Opala, J., concurring) (the trial court has the power to vacate a release and satisfaction of judgment, which was obtained upon a false representation); *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589 (1985) (there was no valid satisfaction in the face of a controversy over the amount of interest that was due).

20. *Jett, supra* note 18 at 563.

21. *Grand River Dam Authority v. Eaton,* Okl., 803 P.2d 705, 708–709 (1990); *Guin v. Security State Bank,* 74 Okl. 102, 168 P. 804, 895 (1917) (the court held that "[a] payment of a judgment to prevent sale under execution or order of sale is not a voluntary satisfaction of the judgment"). *See also Lucas v. First Nat. Bank of Pawnee,* 171 Okl. 606, 43 P.2d 752 (1935) (the court's syllabus ¶ 1); *Bush v. Aetna Building & Loan Ass'n,* 51 Okl. 529, 151 P. 850 (1915) (the court's syllabus).

22. The pay orders were entered February 22, 1991 and May 16, 1991.

merely forewent the opportunity to challenge the funds' seizure—not the freedom to assail the judgment's validity. DUIT was neither estopped to expose the infirmities in the underlying judgment nor to prosecute its equitable counterclaim for restitution.[23]

In sum, neither DUIT's *coerced* satisfaction of judgment nor the unappealed pay orders (in garnishment) pose an impediment to DUIT's quests for vacation relief and for a restitutionary remedy.

## V

## THE TRIAL COURT IS VESTED WITH POST-VACATION COGNIZANCE TO ENTERTAIN AN ANCILLARY RESTITUTIONARY CLAIM

■ Stites asserts that by *his* September 26, 1992 *voluntary dismissal* of the water loss claim the trial court came to be divested of jurisdiction. It was hence without cognizance to compel Stites' repayment of money.

The provisions of 12 O.S.1991 §§ 1031 et seq. clearly authorize the district court to vacate or modify its judgments within the prescribed time intervals *after* due notice is given to all affected parties.[24] The court's continuing jurisdiction over ancillary post-vacation proceedings is explicitly (if not also implicitly) conferred by the clear terms of the statutory scheme. As a condition of vacation, the nisi prius court may (a) *preserve* the liens of judgment (§ 1035)[25], (b) postpone execution on the judgment (§ 1037)[26] or (c) *require* the defendant to post a bond that would stand as security for the payment of damages (§ 1036)[27]. The latter section contemplates proceedings to enforce bonds posted in the course of vacation process. The terms of 12 O.S.1991 §§ 1031 et seq. (particularly §§ 1035, 1036 and 1037), when read together, clearly confer upon the court *ancillary cognizance to implement its vacation orders by administering full and complete remedial process.*

■ The vacation of an *involuntarily* satisfied judgment generally leaves in its wake questions about restitution[28] of satisfaction.[29]

---

**23.** *Spears v. Preble*, Okl., 661 P.2d 1337, 1343 (1983), teaches that the remedy of garnishment is "in aid of and ancillary to the main action" and cannot *create, enlarge or reduce* the defendant's liability. A pay order in garnishment would hence have no effect either on the issues pressed in the action or on the terms of the underlying judgment.

**24.** The pertinent terms of 12 O.S. 1991 § 1031 are:

"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter: * * *
Third. For mistake, neglect or omission of the clerk or *irregularity in obtaining a judgment or order.* * * *" (Emphasis added.)
*See also* §§ 1035, 1036, and 1037, discussed *infra* at notes 25, 26 and 27.

**25.** The terms of 12 O.S. 1991 § 1035 are:

"If a judgment is modified, *all liens and securities* obtained under it *shall be preserved* to the modified judgment." (Emphasis added.)

**26.** The terms of 12 O.S. 1991 § 1037 are:

"When the judgment was rendered before the action stood for trial, *the suspension may be granted, as provided in the last section [§ 1036],* although no valid defense to the action is shown; and the *court shall make such orders, concerning the executions* to be issued on the judgment as shall *give to the defendant the same rights of delay* he would have had if the judgment had been rendered at the proper time." (Emphasis added.)

**27.** The pertinent terms of 12 O.S. 1991 § 1036 are:

"The party seeking to vacate or modify a judgment or order, *may obtain an order suspending the proceedings* on the whole or part thereof. . . . On the granting of any such order, the court, or judge, *may require the party* obtaining any such order *to enter into an undertaking to the adverse party to pay all damages* that may be caused by granting of the same." (Emphasis added.)
*Halliburton v. Illinois Life Ins. Co.*, 170 Okl. 360, 40 P.2d 1086, 1089–1090 (1935); *Hart v. Pharaoh*, Okl., 359 P.2d 1074, 1080 (1961).

**28.** Restitution is an equitable remedy that generally will be available whenever one has received a benefit to which another is justly entitled. *Warren v. Century Bankcorporation, Inc.*, Okl., 741 P.2d 846, 852 (1987). Restatement, Restitution, § 1 (1937) provides: "A person who has been unjustly enriched at the expense of another is required to make *restitution to the other.*" (Emphasis added.) The object of restitution is to put the parties back into the position in which they were before unjust enrichment occurred.

**29.** A restitutionary remedy is specifically authorized by 12 O.S. 1991 § 774.

These are legitimate ancillary issues in the context of vacation relief prescribed by §§ 1031 et seq. In short, the trial court's continuing jurisdiction in post-vacation proceedings extends to issues raised by a plea for restitution to the same extent and in a like manner as it applies to enforcement of a § 1036 bond.

█ A restitutionary remedy, which avails to one upon a judgment's vacation, may be prosecuted in the same case or by a separate action. *At the time of the judgment's vacation in this case no separate action stood commenced in another case.*[30] There was hence no hindrance to the trial court's exercise of power over DUIT's plea for post-vacation restitutionary relief.

### The Effect of Stites' Voluntary Dismissal on DUIT's Restitutionary Claim

█ Some of this court's extant jurisprudence appears to treat a *voluntary dismissal* of a case as the district court's jurisdictional cut-off.[31] According to this line of authority, when a claimant's dismissal is filed the case stands as if no judgment had ever been entered.[32] These precedents are clearly inapposite in the procedural posture of this case.

When by plaintiff's dismissal the district court cognizance was sought to be terminated, the court was amidst administering an ancillary *post-vacation remedy of restitution.*

Its September 25, 1991 order for the return of money that remained in the lawyer's trust account had already been issued in response to DUIT's pre-dismissal restitutionary plea (for repayment of *all funds Stites had received* through garnishment process).[33] Because DUIT's quest for affirmative relief came to be invoked *before* Stites' dismissal of his claim, there was no impediment to the post-dismissal proceeding.[34] In short, Stites' dismissal *divested the trial court neither of its jurisdiction over DUIT's affirmative plea for ancillary restitutionary relief nor of its power to enforce the September 25 order.*

We hence hold that plaintiff's post-vacation dismissal was ineffective to terminate nisi prius cognizance in the face of the then-pending post-vacation counterclaim for restitutionary relief. The court was clearly authorized to consider that claim as a dispute ancillary to the exercise and administration of its §§ 1031 et seq. vacation power.

### VI

### TODAY'S DISMISSAL OF THE STITES' APPEAL AS UNTIMELY AND AN EXPLANATORY COMMENT UPON THE EXTENT OF ITS BAR

█ Appellate review is commenced by bringing a petition in error within thirty days of the date the trial court's judgment or its final order is filed at nisi prius.[35] Timely

---

**30.** DUIT did not commence a separate equity lawsuit for restitution *until after Stites had voluntarily dismissed his action.*

**31.** Extant decisional law, which interprets 12 O.S. 1981 § 684, teaches that, once an action has been *voluntarily* dismissed, *no* jurisdiction may be exercised. *See Firestone Tire & Rubber Company v. Barnett,* Okl., 475 P.2d 167, 168 (syllabus ¶ 3) (1970), where the court states that "[a]fter timely and proper voluntary dismissal of an action by plaintiff, the trial court is without further jurisdiction therein....". *See also Sherry v. Rowe,* 181 Okl. 119, 73 P.2d 134, 135 (1937); *Whitehead v. Williams,* 196 Okl. 411, 165 P.2d 618, 619 (1946); *Shinn v. Morris,* 205 Okl. 289, 237 P.2d 455, 456 (1951); *Goins v. Fox,* Okl., 332 P.2d 220, 221 (1958). These notions are also found in General Motors Acceptance *Corp. v. Carpenter,* Okl., 576 P.2d 1166, 1168 (1978); *Wiley Elec., Inc. v. Brantley,* Okl., 760 P.2d 182, 186 (1988).

**32.** *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 (1985).

**33.** DUIT's pre-dismissal quest was pressed by application filed below on September 16, 1994.

**34.** *See, e.g., Mullis v. Mullis,* Okl., 669 P.2d 763, 765 (1983); *Swick v. Swick,* Okl., 864 P.2d 819, 820–821 (1993).

**35.** *See* 12 O.S. 1991 § 990A, eff. June 1, 1991 [previously 12 O.S. 1991 § 990]; Rule 1.14, Rules On Perfecting a Civil Appeal, 12 O.S. 1991, Ch. 15, App. 2. The pertinent terms of 12 O.S. 1991 § 990A are:

"A. An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court within thirty (30) days from the date the final order or judgment is filed...."

The 1993 and 1994 amendments of § 990A have no legal effect on this appeal.

commencement is jurisdictional.[36] Failure to file an appeal within the statutory time is fatal.[37] In appeals lodged from an adverse order entered in a *postjudgment vacation proceeding*, errors which may be reviewed are confined to those in *granting* or *denying* relief sought upon the grounds advanced and the evidence presented.[38] *No postjudgment quest for relief—other* than one made *by a timely new-trial motion*—will operate to extend the time for appellate review of errors made in a nisi prius judgment or in a final order.[39]

***The First Order.*** The trial court's vacation order, entered September 25, 1991, directed that "any and all money" received on the judgment which remained in the trust account of Stites' lawyer be deposited in court. At that time the garnishee (ODOT) had paid into court two checks, both of which had been remitted to Stites' lawyer. The September 25 order is an *effective exercise* of the trial court's vacation power and of its ancillary cognizance over DUIT's restitutionary counterclaim *then before* the court. It was *appealable at once* under 12 O.S.1991

§ 952(b)(2).[40] Since neither Stites (nor his lawyer who was also affected by the order) appealed from the September 25 order or timely sought its modification or vacation, that order became binding (on both Stites and the lawyer) thirty days after its filing below.

***The Second Order.*** The March 26, 1992 nisi prius decision from which Stites lodged his appeal (1) overruled Stites' motions to quash DUIT's application to pay funds into court and to strike DUIT's response to the motion to quash and (2) ordered Stites to deposit the same funds as those he was *already* under a duty to remit. At first glance the March 27, 1992 appeal from the March 26 order would appear timely. The issue we decide today is whether that disposition is merely a *reaffirmation* of the earlier September 25, 1991 order (and hence no longer within this court's reviewing cognizance) or whether it constitutes a new (appealable) determination reached under circumstances materially changed from those in September.[41] If the first order in this case is

36. *Rodgers v. Higgins*, Okl., 871 P.2d 398, 413 (1993); *State v. County Beverage License No. ABL–78–145*, Okl., 652 P.2d 292, 294–295 (1982); *Western Okl. Chapter, Etc. v. State, Etc.*, Okl., 616 P.2d 1143, 1147 (1980); *see also* Rule 1.14(c), Rules On Perfecting A Civil Appeal, 12 O.S. 1991, Ch. 15, App. 2.

37. *Bane v. Anderson, Bryant & Co.*, Okl., 786 P.2d 1230, 1233 (1989); *County, supra* note 36 at 294–295; *Western, supra* note 36 at 1147; *Ogle v. Ogle*, Okl., 517 P.2d 797, 799 (1973).

38. *Yery v. Yery*, Okl., 629 P.2d 357, 363 (1981).

39. *Bellamy, supra* note 16 at 389 (the court's syllabus ¶ 2); *Missouri Quarries Co. v. Brady*, 95 Okl. 279, 219 P. 368 (1923); *Tolliver v. First Nat. Bank of Bluejacket*, 179 Okl. 191, 64 P.2d 1215 (1937); *Hawkins v. Hurst*, Okl., 467 P.2d 159, 163 (1970); *Timmons, supra* note 19 at 591–592; *Salyer, supra* note 15 at 1363 n. 5.

40. For the pertinent terms of 12 O.S. 1991 § 952(b)(2), see *supra* note 14.

41. For an analogous situation see *Hodgson v. United Mine–Workers of America*, 473 F.2d 118 (D.C.Cir.1972). There, the issue was whether the first or the second order denying intervention marked the triggering event for an appeal. The court holds that the "question of jurisdiction must be resolved by ascertaining whether the

(later) order, from which the appeal was taken, was merely a reinstatement of the court's (earlier) ruling, or whether it constituted a new determination...." *Id.* at 125. *If the later order was "only an attempt to revive the earlier order, the court observes, it did not start the time for appeal all over again."* (Emphasis supplied.) But if it was in essence a new decision on appellants' motion for intervention, it was properly before the appellate court. The court's ultimate holding is that due to *changed circumstances*, the later order "constituted a fresh evaluation" of the intervention quest and hence "amenable to review." *Id.* at 126–127. Similarly, in *Carr v. Brown*, 395 A.2d 79, 82 (D.C.App.1978), the dispositive issue was whether the court's later disposition was a final order that triggered appeal time, or whether it was "simply a reaffirmation" of the court's (earlier) dismissal. Citing *Hodgson* with approval, *Carr* teaches that "scrutiny of the second order to determine its purpose"—i.e., whether it is designed *"merely to reiterate an order"* or *"to amend or alter it"*—is the correct analysis in determining from which order the appeal time begins to run. The court concludes the second order was "just an explanation of the earlier order." *See also in this connection Caswell v. Caswell*, 278 S.E.2d 452, 453 (Ga.App. 1981) (the court holds that appeal time could not be extended by a later order reaffirming the complaint's dismissal); *Forrester v. Ladwig*, 247 Ga. 426, 276 S.E.2d 613, 614 (1981) (the court holds that an order "merely reaffirming" sum-

to be regarded as appealable, but the appeal's commencement was untimely, today's dismissal of this appeal would constitute *an affirmance of the first order.*[42] On the other hand, if this appeal were deemed to be prosecuted in advance of some appealable order in the case, its dismissal would be no bar to another appeal for review of errors sought to be tendered here.[43] In short, an affirmance by dismissal bars appellate relitigation of those issues which escape review because of a jurisdictional defect in lodging the appeal.

We hold that the nisi prius order of March 26 represents but a *reaffirmation* or *reiteration* of the court's earlier September 25 disposition. It merely declares that the *earlier* order has survived the disposition of the motions that challenged its validity. The original September 25 ruling giving DUIT restitutionary relief is now beyond the reach of our reviewing cognizance. This is so because this appeal was not brought here within thirty days of that order's filing.[44] Once an appealable event has occurred, a trial judge is utterly without authority to extend appeal time by any means or in any manner, direct or oblique. Any attempt by the court's March 26, 1992 order to breathe *new* life into the unappealed September 25 ruling must hence fail. The appeal's time trigger is a law-driven mechanism which is beyond the reach of human tinkering by judge or counsel.[45]

## CONCLUSION

Neither the *coerced satisfaction* of summary judgment nor DUIT's failure to appeal from the orders in garnishment barred DUIT from pressing at nisi prius its plea for the judgment's vacation. The post-vacation restitutionary remedy lay well within the trial court's ancillary cognizance to administer the statutory vacation process. Stites' quest for corrective relief from the post-dismissal restitutionary order came too late. That post-dismissal order, for whose review this appeal was lodged, *is but a nisi prius reaffirmation of the earlier restitutionary relief.* Stites' appeal from the later disposition (March 26, 1992) must hence be dismissed as untimely.

**ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED AND THE APPEAL IS DISMISSED AS UNTIMELY.**

KAUGER, V.C.J., and HARGRAVE and WATT, JJ., concur.

WILSON, C.J., and SIMMS, J., concur specially.

LAVENDER, J., concurs in result.

SUMMERS, J., concurs in Parts I, II, III and VI and in the dismissal of appeal.

HODGES, J., dissents.

SIMMS, Justice, concurring specially:

It may appear inconsistent that this Court denied appellee's motion to dismiss this ap-

---

mary judgment did not extend appeal time for review of the earlier disposition); *U.S. EPA v. City of Green Forest,* Ark., 921 F.2d 1394, 1401 (8th Cir.1990), citing *Hodgson, supra.*

**42.** An appeal's dismissal is the functional equivalent of a judgment's affirmance. *Thompson v. Ind. School Dist. No. 94,* Okl., 886 P.2d 996, 997 (1994); *Heiman v. Atlantic Richfield,* Okl., 807 P.2d 257, 262 n. 28 (1991); *Matter of Estate of Burkhart v. Wabaunsee,* Okl., 594 P.2d 361, 363 (1979); *Morrison v. Board of Education of Ind. Sch. Dist. No. 6,* Okl., 424 P.2d 963, 965 (1967); State ex rel. *Mothersead v. Hardister,* 128 Okl. 245, 262 P. 658 (1928) (syllabus ¶ 2); *Stumpff v. Harper,* 90 Okl. 195, 214 P. 709 (1923) (syllabus ¶ 1).

**43.** A dismissal operates as a re-transfer of the cause to the trial court where it then stands in the same posture as if no appeal had ever been taken. If entered after the maximum time for

appeal has expired, the dismissal bars another appeal from the same judgment but does not preclude later litigation of issues that are collateral to the appeal that failed. *Burkhart, supra* note 42 at 363.

**44.** Because Stites is not the prevailing party on appeal, we need not reach his request for appeal-related attorney's fee and costs; nor do we need to consider his argument that the trial court erred in considering DUIT's post-vacation discovery responses.

**45.** *See Herring, supra* note 16 at 483 (the court's syllabus ¶ 1); *Bellamy, supra* note 16 at 389 (the court's syllabus ¶ 2); *Philbrock, supra* note 16 at 457 (the court's syllabus ¶ 2); *Sowers, supra* note 16 at 423; *Starr, supra* note 16 at 562; *Watchorn, supra* note 16 at 566 (the court's syllabus ¶ 2); *Manos, supra* note 16 at 695; *Salyer, supra* note 15 at 1362 n. 2; *Grant, supra* note 16 at 111 n. 4.

**304**

peal by order of July 7, 1992, but now dismisses the appeal for want of jurisdiction because the petition in error was not timely filed within thirty days of the filing of the order below. The question of jurisdiction, however, may be raised at any time, either in trial court or on appeal, *Woods Petroleum Corp. v. Sledge,* 632 P.2d 393 (Okla.1981); *Durham v. Sharum,* 203 Okla. 426, 222 P.2d 1029 (1950), and this Court has a duty to inquire into its own appellate jurisdiction. *Lincoln Bank and Trust v. Oklahoma Tax Comm.,* 827 P.2d 1314 (Okla.1992), *Fields v. A & B Electronics,* 788 P.2d 940 (Okla.1990). Title 12 O.S. 1991 § 990A provides that an appeal is commenced with filing the petition in error within thirty (30) days from the date the appealed order is filed with the clerk of the trial court. In *Rogers v. Higgins,* 871 P.2d 398 (Okla.1993), we held the failure to bring a timely appeal constitutes a jurisdictional defect, and this Court was powerless to entertain a plea for corrective relief.

Because of the dismissal, that portion of the opinion dealing with the actions of the trial court in post-judgment proceedings could be considered *dicta.* I view this part of the opinion as a correct exposition of Oklahoma law, however, and informative to our trial judges. Therefore, I concur specially in today's opinion.

I am authorized to state that WILSON, C.J., joins in the views expressed herein.