504

**Willie E. MURRAY, Plaintiff in Error,**

v.

**Johnston MURRAY, Defendant in Error.**

No. 38236.

Supreme Court of Oklahoma.

Oct. 13, 1959.

As Amended on Denial of Rehearing
Feb. 2, 1960.

Margaret Behringer, Oklahoma City, for plaintiff in error.

Thomas J. Lee, Oklahoma City, for defendant in error.

PER CURIAM.

The parties to this appeal were formerly husband and wife. Defendant in error, hereinafter referred to as plaintiff, brought

an action for divorce. Plaintiff in error, hereinafter referred to as defendant, filed an amended cross-petition seeking a divorce from plaintiff.

In the trial of the divorce action, defendant testified the parties had reached a property settlement among the provisions of which was one to the effect she was to have a $25,500 personal judgment for alimony payable at the rate of $300 per month for 24 months and the balance thereof to be paid in 90 months after the first 24 months in equal installments, "whatever they figure to be".

Defendant testified she understood the terms of the settlement, that it was satisfactory to her and that she wanted the court to approve it and make it a part of the judgment herein.

Plaintiff was present and gave sworn testimony at the trial of the divorce action that he heard the reading of the property settlement agreed to in open court before the trial court; that that was the settlement he and defendant had entered into; and that he wanted the trial court to approve that settlement.

The trial court at conclusion of that trial stated: "The judgment will be entered on the defendant's cross petition, as per journal entry."

No other statement or mention of the judgment for alimony or specific reference to the terms of payment thereof whatsoever was made in such trial by either defendant or plaintiff, or counsel or the court. No other witness testified in that trial.

However, a divorce decree bearing the written "O.K." of the respective attorneys of the parties and signed by the trial district judge, providing in part as follows:

"It is ordered by the Court that the plaintiff pay to the defendant, as her reasonable permanent alimony in money: the sum of $25,500.00 as follows: $300.00 per month, for a period of 24 months, on the 5th day of each and every month, commencing with the 5th day of March, 1956; and the balance thereafter, in the sum of: $18,-

000.00 in equal monthly installments for a period of 97 months, on the 5th day of each and every month, commencing with the 5th day of March, 1958; and the defendant is hereby given a personal judgment against the plaintiff for the unpaid balance of said alimony award; * * *"

was filed. No appeal therefrom being taken, that decree became final.

Defendant thereafter filed her amended application for order nunc pro tunc calling the attention of the trial court to the above discrepancy, and asking correction of the divorce decree to make it "a true record of the alimony judgment heard and approved" by the court "but not truly recorded through inadvertence or mistake * * *."

The application was assigned to the trial judge who had originally heard the divorce proceeding. Upon the hearing of the application, the trial court heard the testimony of witnesses as to what the testimony had been in the original case as to the agreement of the parties as to terms of property settlement and a transcript of the testimony taken at the divorce trial was introduced as an exhibit as was the "Divorce Decree".

Defendant in such hearing testified that she had neither made any other agreement nor authorized her attorney to make any change in the terms of the property settlement at variance with that reflected by the above statement of effect of her testimony at divorce trial. Her attorney (in the original proceeding) testified in the nunc pro tunc hearing that what he meant by the language above quoted, "whatever they figure to be," in his question to defendant in the original divorce trial was, "we had to calculate the ninety months in order to find out whatever was necessary to bring it beyond the ten years" "with the qualification there 'whatever they figure to be'" (referring to the number of months required to pay the balance owing after payment for 24 months rather than the amount to be paid per month).

One provision of "Divorce Decree" was as follows:

"It is further ordered, adjudged and decreed by the Court that the agreement of plaintiff and defendant relative to their property rights, the alimony rights of defendant, and other rights growing out of the marriage relation, be, and the same is hereby approved by this Court, and ordered entered herein as a part of this decree; * * *."

At the conclusion of nunc pro tunc hearing the trial court found "that the decree contains what the parties, through their attorneys, agreed to be the property settlement, and that the aforesaid application should in all things be denied" and did deny such application. Defendant filed a motion for new trial, after the overruling of which she brought the present appeal.

The disagreement between the parties arises from a requirement of Federal Statute (26 U.S.C.A. (I.R.C.1954) § 71) that a divorced wife receiving alimony payable over a period ending more than ten years from the date of the decree must (to the extent provided in that statute) include the payments in reporting her gross income for income tax purposes. The period referred to in the testimony of defendant hereinabove quoted would be only 114 months or 9½ years. The signing of the "O.K.d" journal entry by the trial court purportedly extended the payment period to 121 months.

Defendant urges, inter alia, that we should now reverse the judgment and order of the trial court which denied order nunc pro tunc. She cites authorities substantiating her views.

In her argument, referring to the attorney who represented her in the original divorce action, she states:

"He was positive and definite about the number of payments to be made. He had not figured out the amount in dollars and cents to be paid in each installment over the period of ninety months; but it is abundantly clear he had the ninety months in mind."

Defendant made other arguments and plaintiff argued in opposition on matters we consider extraneous to the central issue here. We deem no further treatment of them proper in view of the following discussion.

■ The testimony of defendant at the nunc pro tunc hearing was contradicted only to the extent of her attorney in the divorce action stating (at the nunc pro tunc hearing) that he had something different in his mind in having asked the question (at the divorce trial), which elicited her testimony, than the plain effect of her testimony. She testified that she had an agreement with her husband that he would pay her $25,500 in alimony at the rate of $300 per month for the first two years and the balance to be paid out in equal monthly installments over a period of 90 months thereafter, "whatever they figure to be". It has not been shown that the parties agreed to a change in the terms of that portion of that agreement and, absent an authorization to her attorney to agree to a change in the agreement purportedly made in her behalf, such an agreement upon his part ostensibly in her behalf could not be properly recognized by the trial court.

■ In the journal entry of judgment filed in the divorce action in the trial court, the court decreed judgment in favor of the defendant and cross-petitioner, plaintiff in error here, in accordance with and approving the agreement of the parties. In light of the testimony in the hearing from which the appeal involved here was taken, we conclude that the trial court was without authority of an evidentiary basis to enter a journal entry contrary to the judgment approving that contract, there being no evidence whatever to sustain it.

In the case of Jones v. Sun Oil Co., Tex. Civ.App., 145 S.W.2d 615, paragraph 6 of the editorial syllabus is as follows:

"While a 'judgment' of a court is what the court pronounces, the 'rendition of judgment' is a judicial act by which the court settles and declares the decision of the law upon the matters at issue, whereas 'entry of the judgment' is a ministerial act to preserve evidence of the judicial act, and there-

fore the court has inherent power by a judgment 'nunc pro tunc' to correct the record so that it will accurately state the judgment of the court as rendered."

In Stevens Expert Cleaners & Dyers, Inc. v. Stevens, Okl., 267 P.2d 998, 1002, we said:

" * * * that a trial court cannot by order nunc pro tunc modify or amend a former judgment to make it the judgment he intended to render but did not. But, the court can, by such order, correct the journal entry so that the words have the meaning intended, in that they reflect the judgment actually rendered or pronounced. This reasoning is in line with that contained in the opinion in the case of Hawks v. McCormack, 180 Okl. 569, 71 P.2d 724, 725."

The judgment of the trial court is reversed with directions to render judgment not inconsistent with the views herein expressed.

WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD, and IRWIN, JJ., concur.

JACKSON, J., dissents.